25CA2047 Peo in Interest of MR-C 07-02-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA2047
Adams County District Court No. 23JV30039
Honorable Kelley R. Southerland, Judge

The People of the State of Colorado,

Appellee,

In the Interest of M.R-C., V.C., and X.C., Children,

and Concerning R.R. and E.C.,

Appellants.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE PAWAR
Sullivan and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 2, 2026

Heidi Miller, County Attorney, Megan Curtiss, Assistant County Attorney, Westminster, Colorado, for Appellee

Debra W. Dodd, Guardian Ad Litem for M.R-C.

Sheena Knight, Guardian Ad Litem for V.C.

Josi McCauley, Guardian Ad Litem for X.C.

Robin Tieman, Office of Respondent Parents' Counsel, Boulder, Colorado, for Appellant R.R.

Beth Padilla, Office of Respondent Parents' Counsel, Durango, Colorado, for Appellant E.C.

¶ 1 In this dependency and neglect action, R.R. (mother) and E.C. (father) appeal the judgment terminating their parent-child legal relationships with M.R-C., V.C., and X.C. (the children). We affirm.

## I. Background

¶ 2 In 2023, the Adams County Human Services Department (the Department) filed a petition in dependency and neglect raising concerns about educational neglect and a lack of stability. The juvenile court adjudicated the children dependent or neglected and adopted treatment plans for both parents.

¶ 3 In 2024, the Department moved to terminate both parents' parental rights. At father's request, the juvenile court amended his treatment plan and continued the termination hearing to give him time to comply with the amendments.

¶ 4 The juvenile court heard evidence on the Department's motion to terminate parental rights over seven days between April and July 2025. In October 2025, thirty-one months after the petition was filed, the juvenile court terminated both parents' parental rights.

¶ 5 Mother and father now appeal.

II. Father's Motion to Continue and Other Evidentiary Challenges

¶ 6 Father contends that the juvenile court erred by (1) denying his request to continue on the last day of the hearing; (2) limiting the testimony presented by his expert witness; and (3) qualifying his life skills worker as an expert. We disagree.

A. Father's Continuance Request

¶ 7 A motion for continuance is left to the sound discretion of the juvenile court, and its ruling will not be disturbed on appeal absent a clear abuse of that discretion. *People in Interest of A.J.*, 143 P.3d 1143, 1150 (Colo. App. 2006). In ruling on such a motion, the court should balance the need for orderly and expeditious administration of justice against the facts underlying the motion, considering the child's need for permanency. *Id.*

¶ 8 When, as here, a case is subject to expedited permanency guidelines because one or more of the children was less than six years old at filing, the juvenile court "shall not grant a delay unless good cause is shown and unless the court finds that the best interests of the child will be served by granting a delay." § 19-3-602(1), C.R.S. 2025.

¶ 9     On the last day of the hearing, father requested a continuance based on certain statements X.C. made a few days before.  The court denied the motion, finding that a continuance was not appropriate because, although the specific statement was new, the issue raised by the nature of the disclosure was not.  Father did not contend at trial and does not contend now that the best interests of any of the children would have been served by granting the continuance.  § 19-3-104, C.R.S. 2025; § 19-3-602(1).  We therefore discern no error in the court's denial of the continuance.

¶ 10     Relatedly, father also challenges the admission of those disclosures during the trial.  But because he did not raise this challenge before the juvenile court, we decline to address it.  *See People in Interest of T.E.R.*, 2013 COA 73, ¶ 30 (issues not raised in the trial court will not be considered on appeal).

### B.     Limiting Father's Expert's Testimony

¶ 11     Father next contends that the juvenile court erred by preventing his expert witness from opining "as to whether the court should terminate [father]'s parental rights."  The court found that the "the ultimate issue . . . falls outside the specific qualifications of this witness."

¶ 12 Father contends that the court abused its discretion because the ongoing caseworker was permitted to opine on this issue earlier in the hearing. But father does not indicate, and our review of the record does not reveal, where the Department's caseworker was permitted to offer this opinion. To be sure, the caseworker confirmed that she recommended termination of parental rights as to all three children and opined that termination was in each of the children's best interests. But this testimony is distinguishable from, as father frames the issue, an expert being "permitted to testify as to whether the trial court should terminate parental rights." We therefore discern no abuse of the court's discretion.

¶ 13 Father also mentions, without developing an argument, that his expert was "not permitted to testify as to 'anything of a sexual nature.'" But father cites to the county attorney's argument, not a ruling made by the juvenile court. The juvenile court found that father's expert was not qualified to answer "questions [that] go to the nature of the [Sex Offender Management Board] guidelines" and instead urged father to focus on the areas of expertise that his expert was qualified in. As father does not take issue with the

4

limitation actually imposed by the juvenile court, we will address this claim no further.

### C. Qualification of Life Skills Worker as an Expert

¶ 14    Expert testimony is subject to the four-part analysis required by *People v. Shreck*, 22 P.3d 68 (Colo. 2001). *People in Interest of A.F.*, 2025 COA 76, ¶ 19. When a party properly objects to the admission of such testimony, the juvenile court must make specific findings as to the four *Shreck* factors: the reliability of the principles upon which the expert's testimony is based, the qualifications of the witness, the usefulness of the testimony, and the balancing required by CRE 403. *Id.* at ¶ 20. The court's findings must be explicit. *Id.*; *see also Kutzly v. People*, 2019 CO 55, ¶ 11 ("[A] trial court fails to make a specific finding if such a finding must be inferred.").

¶ 15    Father contends that the juvenile court erred by qualifying his life skills worker as an expert without addressing the reliability of "life skills" as an area of expertise. But he did not raise any concern to the juvenile court about the reliability of the principles upon which the life skills expert's opinion was based. Instead, father's voir dire of the witness challenged only the quantity of her

experience. He questioned whether the witness had completed clinical hours, given presentations, conducted trainings, or been published — not whether the underlying principles within her field were reliable. Moreover, father objected that "the burden is on the Department to persuade the Court that *this witness* satisfies [CRE] 702, and that burden has not been satisfied." (Emphasis added.) The court addressed father's objection by finding, in "consideration of Rule 702," that "the skill and experience of the witness" qualified her as an expert in life skills education. *See A.F.*, ¶ 23 ("If a witness is sufficiently qualified to offer the proposed opinion, and the juvenile court so finds, any challenges to the witness's qualifications go to the weight of the testimony, not its admissibility.").

¶ 16     While father is correct that a parent need not specifically cite to *Shreck* or *A.F.* to preserve an objection, a general objection "under CRE 702" is not sufficient to alert the juvenile court to the need to make the four required findings. We therefore conclude this issue is not preserved, and decline to address it. *See People in Interest of M.B.*, 2020 COA 13, ¶ 14; *People v. Ujaama*, 2012 COA

36, ¶ 37 (an issue is unpreserved when the grounds raised on appeal are different from those raised below).

### III.    Reasonable Efforts

¶ 17    Father and mother both contend that the juvenile court erred by finding that the Department made reasonable efforts to rehabilitate them.  We disagree.

### A.    Standard of Review and Applicable Law

¶ 18    Before the juvenile court may terminate parental rights under section 19-3-604(1)(c), C.R.S. 2025, a department must make reasonable efforts to rehabilitate the parent and reunite the family.  *See* §§ 19-1-103(114), 19-3-100.5(1), 19-3-208, C.R.S. 2025; § 19-3-604(2)(h).  "Reasonable efforts" means the "exercise of diligence and care" for a child in out-of-home placement.  § 19-1-103(114).

¶ 19    A department satisfies its reasonable efforts obligation if it provides services in accordance with section 19-3-208.  § 19-1-103(114); *see People in Interest of E.D.*, 2025 COA 11, ¶ 10.  As necessary and appropriate, those services include screenings, assessments, and individual case plans; home-based family and crisis counseling; information and referral services; family time services; and placement services.  § 19-3-208(2)(b)(I)-(V).

¶ 20　　When evaluating a department's efforts, the juvenile court should consider whether the services provided were appropriate to support the parent's treatment plan. *E.D.*, ¶ 11. But the parent is ultimately responsible for using those services to obtain the assistance needed to comply with the treatment plan. *Id.* at ¶ 12.

¶ 21　　Whether a department satisfied its obligation to make reasonable efforts is a mixed question of fact and law. *Id.* at ¶ 13. We review the juvenile court's factual findings for clear error but review de novo its legal determination as to whether the Department satisfied its reasonable efforts obligation. *Id.*

### B. Father's Reasonable Efforts Claims

¶ 22　　Father contends that the juvenile court erred by finding that the Department provided reasonable efforts because the Department did not provide him with appropriate court-ordered family time. Many of the concerns father now raises about family time were not presented to the juvenile court, and we therefore decline to consider them. *See T.E.R.*, ¶ 30. However, father did specifically contend that the Department failed to make reasonable efforts because it did not provide therapeutic family time. In particular, father claimed that, notwithstanding the juvenile court's

8

order that it do so, the Department failed to provide therapeutic family time for (1) father and V.C. for seven months and (2) father and X.C. for three and a half months.

¶ 23    The juvenile court reviewed family time in light of the issue that father raised and found that the Department made reasonable efforts in relevant part because it "kept family time referrals in effect as appropriate in this case" and that reasonable efforts were made.

¶ 24    The record supports this finding. The caseworker testified that she made a referral for father's therapeutic family time "right away" and, in any event, within a week of the court's order for therapeutic family time. While father claimed that the referral was for an assessment rather than for services, the caseworker insisted that the referral was for therapeutic family time services. The juvenile court, as the trier of fact, is entrusted to weigh conflicting evidence and assess witness credibility. *See In re Marriage of Kann*, 2017 COA 94, ¶ 36 ("[O]ur supreme court has . . . expressed unbridled confidence in trial courts to weigh conflicting evidence."). While the caseworker agreed that making the referral to the specific provider resulted in "significant delay in starting family time" for father, she testified that she chose that provider because of its

expertise in working with parents with cognitive delays. The caseworker testified that she made another referral when it became apparent that the first provider would not work with the family. She further testified that she pursued a single case agreement and pushed that provider to start family time with father more expeditiously.

¶ 25 Based on the evidence before the juvenile court, we cannot say that it erred by finding that the Department made reasonable efforts as it pertained to father's family time.

¶ 26 Father also claims the Department did not make reasonable efforts because it did not refer him to appropriate services, including child protection therapy and life skills.[1]

¶ 27 The juvenile court found that the "Department initiated a number of referrals for treatment and services" for father, including family time, life skills, evaluative services, and individual therapy.

---

[1] Although father says that his treatment plan was not appropriate, he does not dispute the goals and objectives in it. Rather, his argument focuses on the appropriateness of the referrals and services offered. He contends that "[t]he services offered were not appropriate," and that there "should have been different referrals made" for him to meet those goals, including therapeutic life skills, boundary work, and victim impact work. Because this is effectively a reasonable efforts challenge, we address it as such.

The court further found that the Department made appropriate accommodations for father under the Americans with Disabilities Act.

¶ 28　　The record supports these findings.  In addition to the family time referrals detailed above, the caseworker testified that she made four referrals for life skills before father engaged in that service. The caseworker testified that she made multiple referrals for mental health evaluations and services for father.  The caseworker admitted that she did not make referrals for boundary work for father and testified that she did not refer father for child protection therapy because he had not yet met that program's criteria.

¶ 29　　A juvenile court may defer to a department's "prioritiz[ation of] certain services or resources to address a family's most pressing needs in a way that will assist the family's overall completion of the treatment plan."  *People in Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶ 33.  Here, the caseworker testified that she prioritized services like life skills because father's "basic needs need to be met before we can really move forward and address things" like the child protection concerns that brought the family to the Department's attention.  Father's life skills provider testified that father's goals

were still focused on his individual basic needs, and that she was not able say if he was a good candidate for therapeutic life skills because of his inconsistent engagement in their sessions. Father's inconsistent engagement continued after the provider's testimony; by the end of the hearing three months later, father was unsuccessfully discharged from services because he stopped attending.

¶ 30 The court also found that the Department made reasonable efforts to support father's mental health objectives, but those efforts were unsuccessful because father denied wanting mental health services "for much of the case." The caseworker opined that father needed to engage in mental health services to learn healthy coping skills and safely manage his depression and anxiety before he could successfully work with the children in a trauma-informed way. The caseworker testified that she would not refer father for mental health services until father wanted to engage with them. However, she did make referrals to the mental health providers that father requested, specifically, for a neuropsychological evaluation and medication management. While father was reportedly attending individual therapy by the conclusion of the termination trial, the

caseworker had limited information about his engagement and opined that she still observed "significant symptomology" that would make it difficult for him to parent any of the children.

¶ 31　Given this evidence, we cannot conclude that the Department failed to provide appropriate services as part of its reasonable efforts. Therefore, we will not disturb the juvenile court's findings and legal conclusions.[2]

## C.　Mother's Reasonable Efforts Claims

¶ 32　Mother contends that the juvenile court erred by finding the Department made reasonable efforts because the Department failed to make timely referrals for her. The juvenile court specifically considered mother's contention that the Department's delay in making some referrals resulted in a failure to provide reasonable efforts. The court found that any failure to make timely referrals

---

[2] Father also makes an undeveloped claim that his "treatment plan was fashioned on the premise that father sexually abused his children." While this claim was central in his presentation to the juvenile court, he did not develop it before us. Therefore, we do not address it. *See People in Interest of D.B-J.*, 89 P.3d 530, 531 (Colo. App. 2004) (where the appellant does not identify supporting facts, make specific arguments, or set forth specific authorities to support a contention, the contention is not properly before the appellate court and will not be addressed).

did not rise to a level of a lack of reasonable efforts. It further found that "at all times in this case, many and varying services were in effect for the benefit of the family," and that "the efforts were not successful, but the efforts were reasonable."

¶ 33    The record supports these findings, and we conclude that the Department met the reasonable efforts standard. It devised a treatment plan for mother; provided multiple referrals for life skills services, mental health services, and substance dependence treatment, which were active throughout the two-year case; coordinated therapeutic family time; and facilitated placement and treatment services for the children. While mother specifically claims that the Department should have done more to assist her with housing, she does not provide, and we cannot discern, any requirement in the Children's Code for a Department to provide housing to a parent. And in any event, the caseworker testified that the Department provided four referrals for life skills services with the express hope that mother would engage in those services to obtain stable housing. Mother declined to engage with life skills until well after the termination hearing began.

¶ 34    Mother also contends that the juvenile court erred by finding that the Department made reasonable efforts because the Department failed to provide family time consistent with court orders throughout the case.

¶ 35    We cannot review this issue because it was not properly preserved. *See T.E.R.*, ¶ 30. Mother argued to the juvenile court that the Department's failure to comply with its internal regulations, along with the lack of referrals for family therapy or other "services to assist the parent-child interactions," resulted in "significant issues with reasonable efforts in this case." The court addressed those concerns in its judgment.

¶ 36    As detailed above, the juvenile court found that the Department provided reasonable efforts. In doing so, the court found that the Department "provided an extended period of therapeutically supervised family time" for mother. The record supports that finding. But the court did not have the opportunity to make specific findings about any purported irregularity in the provision of those services because mother did not alert the court to any issue related to her family time. *See People v. Melendez,* 102 P.3d 315, 322 (Colo. 2004) (While "[w]e do not require that parties

use 'talismanic language' to preserve particular arguments for appeal, . . . the trial court must be presented with an adequate opportunity to make findings of fact and conclusions of law on any issue before we will review it." (citation omitted)).

¶ 37    Therefore, we will not disturb the juvenile court's findings and legal conclusions regarding the Department's reasonable efforts related to mother.

## IV. Fit Within a Reasonable Time

¶ 38    Mother also contends that the juvenile court erred by finding that she could not become fit within a reasonable time. We disagree.

### A. Standard of Review and Applicable Law

¶ 39    Whether a juvenile court properly terminated parental rights presents a mixed question of fact and law because it involves application of the termination statute to evidentiary facts. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15. "We review the juvenile court's findings of evidentiary fact — the raw, historical data underlying the controversy — for clear error and accept them if they have record support." *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10. But we review de novo the juvenile court's legal conclusions

based on those facts, including whether a parent is fit. *See id.* at

¶ 11; *see also People in Interest of A.J.L.*, 243 P.3d 244, 246 (Colo. 2010) (evidence supported the juvenile court's factual "findings and its legal conclusion that [the parent was] unfit").

¶ 40 An unfit parent is one whose conduct or condition renders them "unable or unwilling to give the child reasonable parental care to include, at a minimum, nurturing and safe parenting sufficiently adequate to meet the child's physical, emotional, and mental health needs and conditions." § 19-3-604(2). In determining whether a parent's conduct or condition is likely to change within a reasonable time, "the court may consider whether any change has occurred during the proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition." *People in Interest of S.Z.S.*, 2022 COA 133, ¶ 24. The court need not give a parent additional time, even when there has been recent progress on the treatment plan. *Id.* at ¶¶ 24, 28-29.

¶ 41 What constitutes a reasonable time is fact specific and must be determined by considering the physical, mental, and emotional conditions and needs of each particular child. *Id.* at ¶ 25. When, as here, a child is under six years old at the time of the filing of the

17

petition, the action is subject to the expedited permanency planning provisions, and the court must consider the child's need to be placed in a permanent home as expeditiously as possible. §§ 19-1-102(1.6), 19-1-123, C.R.S. 2025.

## B. Analysis

¶ 42 The juvenile court "weighed each parent's social history, considered whether their conduct can be changed, . . . the length of time the case was open, the numbers and types of referrals made by the Department on the parents' behalf, and the overall significantly limited progress parents have made." The court found that the problems that led to the opening of the case remained problems at the conclusion of the termination hearing. The court found that it could not "reasonably see a path towards reunification in any foreseeable or reasonable period of time" because "[t]he work remaining for parents to complete, including the integration of an understanding of the impacts of their parenting on the children, is too great." The court found that mother's "late-stage engagement in her treatment plan objectives is certainly positive, but the engagement is late for meaningful improvement in relationship to the longstanding nature of the case." The court found that mother

18

would "require a substantial, lengthy, and unreasonable amount of time from this late point in the case" before she could potentially become fit.

¶ 43     Mother contends, with some record support, that she recently engaged in substance monitoring to demonstrate sobriety, displayed improvements in parenting during therapeutically supervised family time, and began substance dependence treatment. But the juvenile court was not required to give mother's recent progress more weight than her failure to engage in services for the first two years of the dependency action. *See S.Z.S.*, ¶¶ 24, 28-29. And we cannot reweigh the evidence. *Id.*

¶ 44     The court properly considered the ages, needs, and conditions of the children, and the potential impact on them of giving mother additional time to become fit. The caseworker provided uncontroverted testimony about the children's myriad services and extensive needs. The caseworker testified that M.R-C. needed a caregiver that could "hold extreme boundaries that are clear and unwavering" and that she was asking for permanency and for an end to the dependency action. The caseworker testified that V.C. needed "a significant amount of support" every day because of her

19

"very intense and charged" behaviors, and that V.C. was "requesting permanency and seeking that this case be done." And the caseworker testified that X.C. required a caregiver with "a high level of maturity and sexual development knowledge" to meet her high needs. The court found that additional time in the dependency action would not be in the children's best interests. Mother does not challenge that finding now.

¶ 45 We therefore discern no error in the court's findings and conclusion that mother would not become fit within a period of time reasonable for the children.

## V. Disposition

¶ 46 The judgment is affirmed.

JUDGE SULLIVAN and JUDGE MEIRINK concur.